UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

FLORA J. PALMER,                          )
                                          )
            Plaintiff                     )
                                          )
v.                                        )     No. 2:13-cv-194-NT
                                          )
CAROLYN W. COLVIN,                        )
Acting Commissioner of Social Security,   )
                                          )
            Defendant                     )

### REPORT AND RECOMMENDED DECISION[1]

This Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal raises the question of whether the administrative law judge supportably found that the plaintiff was not disabled prior to March 31, 2007, her date last insured for SSD benefits. The plaintiff seeks reversal and remand on the basis that the administrative law judge erred in failing to follow Social Security Ruling 83-20 ("SSR 83-20"), pursuant to which he should have called a medical expert at her hearing to assist him in determining the onset date of her disability. *See* Plaintiff's Statement of Errors ("Statement of Errors") (ECF No. 11) at 5-8.[2] She also asks that, on remand, the court direct that her case be assigned to a different administrative law judge. *See id.* at 10-11. I recommend that the court reverse the decision and remand this case for further

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), as amended January 1, 2013, which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me on March 14, 2014, pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

[2] The plaintiff also contends that, as a result of the administrative law judge's failure to apply SSR 83-20, he erroneously found at Step 2 that she had no medically determinable impairment prior to June 9, 2010, and his findings for the period prior to June 9, 2010, are unsupported by substantial evidence. *See* Statement of Errors at 9-10. Where applicable, I have considered these derivative points of error in connection with her main point of error.

1

proceedings, but that it decline the plaintiff's request to direct that it be assigned on remand to another administrative law judge.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff met the insured status requirements of the Social Security Act through March 31, 2007, Finding 1, Record at 23; that, prior to June 9, 2010, the date that she became disabled, there were no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment, Finding 3, *id*.; that, beginning on June 9, 2010, she had severe impairments of significant bilateral patellofemoral osteoarthritis, non-traumatic rupture of posterior tibial tendon, and morbid obesity, Finding 4, *id*. at 25; that, since June 9, 2010, she had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), except that due to lower extremity impairments complicated by obesity, she could lift and carry 10 pounds occasionally and up to 10 pounds frequently, stand and walk for two hours and sit for six hours in an eight-hour day with normal breaks, push and pull within the cited weight tolerances, occasionally climb ramps and stairs but never ladders, ropes, or scaffolds, occasionally balance, stoop, and crouch but never kneel or crawl, and would need to avoid environments of unprotected heights, moving machinery, and irregular terrain, Finding 6, *id*.; since June 9, 2010, considering her age (advanced age on June 9, 2010, her established disability onset date), education (at least high school), work experience (no transferable work skills), and RFC, there were no jobs existing in significant numbers that she could perform, Findings 8-11, *id*. at 26; that she was not disabled prior to June 9, 2010, but became disabled on that date and continued to be disabled through the date of the decision, April 26, 2012, Finding 12, *id*.; and

that she was not disabled at any time through March 31, 2007, her date last insured, Finding 13, *id*. at 27.[3] The Appeals Council declined to review the decision, *id*. at 1-3, making it the final determination of the commissioner. 20 C.F.R. §§ 404.981, 416.1481; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

## I. Discussion

### A. Determination of Onset Date

As the plaintiff points out, *see* Statement of Errors at 5-6, SSR 83-20 sets forth the commissioner's policy on establishment of the onset date of disability, *see* SSR 83-20, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991, at 49 ("In addition to determining that an individual is disabled, the decisionmaker must also establish the onset date of disability. In many claims, the onset date is critical; it may affect the period for which the

---

[3] Whereas entitlement to SSD benefits hinges in part on acquisition of insured status, entitlement to SSI benefits does not. *See, e.g., Splude v. Apfel*, 165 F.3d 85, 87 (1st Cir. 1999) ("In 1972, Congress added a new social security program to provide 'supplemental security income' (called 'SSI') for 'aged, blind and disabled' persons of limited means regardless of their insured status. This is a social welfare program funded out of general taxpayer revenues. SSI is available even to those who qualify for SSD, but SSD income is considered in determining whether a disabled person qualifies for SSI under the latter's means test.") (citations omitted); *Chute v. Apfel*, No. 98-417-P-C, 1999 WL 33117135, at *1 n.2 (D. Me. Nov. 22, 1999) ("To be eligible to receive SSD benefits the plaintiff had to have been disabled on or before her date last insured (March 31, 1995); however, eligibility for SSI benefits is not dependent on insured status."). The administrative law judge effectively found the plaintiff eligible for SSI, but not SSD, benefits.

individual can be paid and may even be determinative of whether the individual is entitled to or eligible for any benefits.").

The ruling provides, in relevant part, with respect to disabilities of nontraumatic origin:

> With slowly progressive impairments, it is sometimes impossible to obtain medical evidence establishing the precise date an impairment became disabling. Determining the proper onset date is particularly difficult, when, for example, the alleged onset and the date last worked are far in the past and adequate medical records are not available. In such cases, it will be necessary to infer the onset date from the medical and other evidence that describe the history and symptomatology of the disease process
>
> ***
>
> In some cases, it may be possible, based on the medical evidence to reasonably infer that the onset of a disabling impairment(s) occurred some time prior to the date of the first recorded medical examination, e.g., the date the claimant stopped working. How long the disease may be determined to have existed at a disabling level of severity depends on an informed judgment of the facts in the particular case. This judgment, however, must have a legitimate medical basis. At the hearing, the administrative law judge (ALJ) should call on the services of a medical advisor when onset must be inferred. If there is information in the file indicating that additional medical evidence concerning onset is available, such evidence should be secured before inferences are made.

*Id.* at 51.

The administrative law judge did not cite SSR 83-20; however, a failure to do so is harmless to the extent that the dictates of the rule are otherwise heeded. *See, e.g., Briscoe ex rel. Taylor v. Barnhart,* 425 F.3d 345, 352 (7th Cir. 2005) ("The ALJ did not refer to SSR 83-20 specifically in his decision, but this omission by itself is not reversible error. We must determine whether the ALJ nevertheless properly applied the requisite analysis. Our review of the decision leads us to conclude that he did not."); *Field v. Shalal*[a], No. CIV. 93-289-B, 1994 WL 485781, at *3 (D. N.H. Aug. 30, 1994) ("The ALJ's failure to explicitly rely on SSR 83-20 does not by

4

itself require remand. In this case, however, the ALJ's reasoning also fails to comport with SSR 83-20's substantive requirements.") (citation omitted).

While SSR 83-20 does not mandate in every instance that a medical advisor be called, or additional evidence be sought, courts have construed one or both of those steps to be essential when the record is ambiguous regarding onset date. *See, e.g., Katt v. Astrue*, No. 05-55043, 2007 WL 815418, at *1 (9th Cir. Mar. 14, 2007) ("[A]n ALJ must call a medical expert if there is ambiguity in the record regarding the onset date of a claimant's disability. If the medical evidence is not definite concerning the onset date and medical inferences need to be made, SSR 83-20 requires the administrative law judge to call upon the services of a medical advisor and to obtain all evidence which is available to make the determination.") (citation and internal quotation marks omitted); *Blea v. Barnhart*, 466 F.3d 903, 910 (10th Cir. 2006) ("[A] medical advisor need be called only if the medical evidence of onset is ambiguous.") (citation and internal quotation marks omitted); *Briscoe*, 425 F.3d at 353 ("The ALJ acknowledged that the medical evidence was inconclusive. Rather than explore other sources of evidence, as SSR 83-20 requires, the ALJ drew a negative inference at that point."); *May v. Social Sec. Admin. Comm'r*, No. 97-1367, 1997 WL 616196, at *1-*2 (1st Cir. Oct. 7, 1997) (because evidence regarding date on which claimant's mental impairment became severe was ambiguous, SSR 83-20 required administrative law judge to consult medical advisor); *Grebenick v. Chater*, 121 F.3d 1193, 1200-01 (8th Cir. 1997) ("It is important to understand that the issue of whether a medical advisor is required under SSR 83-20 does not turn on whether the ALJ could reasonably have determined that [claimant] was not disabled before September 30, 1982. Rather, when there is no contemporaneous medical documentation, we ask whether the evidence is ambiguous regarding the possibility that the onset of her disability occurred before the expiration of her

insured status. If the medical evidence is ambiguous and a retroactive inference is necessary, SSR 83-20 requires the ALJ to call upon the services of a medical advisor to insure that the determination of onset is based upon a legitimate medical basis.") (citations and internal quotation marks omitted).

The plaintiff argues that the administrative law judge transgressed SSR 83-20 when he dismissed her claim of disability, as buttressed by her testimony, her husband's testimony, and a retrospective opinion of a later treating source, Su-Anne Hammond, D.O., strictly on the basis of lack of contemporaneous medical evidence of an impairment. *See* Statement of Errors at 5-8.[4] At oral argument, her counsel asserted that two medical records created an ambiguity that obligated the administrative law judge to call a medical expert to assist in inferring the onset date of her disability: (i) an emergency room record dated September 10, 2007, less than six months after her date last insured, in which, when she presented for symptoms of an upper respiratory infection, she was noted to be morbidly obese, *see* Record at 329-30, 334, and (ii) a notation by orthopaedic specialist Omar D. Crothers, III, M.D., on September 9, 2011, that x-rays revealed "significant patellofemoral osteoarthritis in both knees and what is probably endstage weightbearing surface arthritis in the left knee, probably not quite that extreme in the right knee[,]" *id*. at 370. Dr. Crothers concluded, "Basically, this is a woman who is at least 100 pounds above an appropriate weight for having her knees replaced, and the reality is at least her left knee, that is what she needs." *Id*. He noted that he would be happy to see her back when she had succeeded with appropriate weight loss. *See id*.

---

[4] The plaintiff notes that she and her husband testified that she did not have medical insurance prior to her date last insured and that she was uninsured until approximately 2010, when she received coverage through her husband's MaineCare insurance. *See* Statement of Errors at 7 & n.3; Record at 47-48, 70. She points out that she had her husband also testified that she had anxiety about visiting doctors. *See id*. at 7 & n.2; Record at 61, 69-70.

6

Counsel for the commissioner objected that the plaintiff had not cited the Crothers record in her statement of errors, as a result of which he had not focused on it. Her counsel conceded the omission but contended that she had sufficiently raised the point when she argued that "[t]here can be no question that [her] impairments were long-standing, slowly progressing and non-traumatic[,]" and that the "very nature" of the impairments found severe as of June 9, 2010, including significant bilateral patellofemoral osteoarthritis and morbid obesity, "makes it apparent that they were present and were symptomatic over an extended period." Statement of Errors at 8.

I agree that the plaintiff's omission to cite the Crothers evidence in her statement of errors is not fatal to its consideration on appeal. She raised her underlying point – that, given the progressive nature of her impairments, the later medical evidence shed light on her condition prior to her date last insured – sufficiently clearly to avoid waiver. *Compare, e.g.*, *Farrin v. Barnhart,* No. 05–144–P–H, 2006 WL 549376, at *5 (D. Me. Mar. 6, 2006) (rec. dec., *aff'd* Mar. 28, 2006) ("Counsel for the plaintiff in this case and the Social Security bar generally are hereby placed on notice that in the future, issues or claims not raised in the itemized statement of errors required by this court's Local Rule 16.3(a) will be considered waived and will not be addressed by this court.") (footnote omitted).

At oral argument, counsel for the commissioner contended that, even taking the Crothers evidence into account, neither that evidence nor the 2007 emergency room note sufficed to create an ambiguity for purposes of SSR 83-20 because neither addressed the severity of the plaintiff's impairment during the relevant time. He pointed out that, in *Mooers v. Astrue*, Civil No. 08-107-B-W, 2008 WL 4826290 (D. Me. Nov. 5, 2008) (rec. dec., *aff'd* Dec. 8, 2008), this court stated that, for purposes of SSR 83-20, the obligation to call a medical expert at hearing or seek out

7

other medical and non-medical evidence not presented by a claimant does not arise unless the claimant provides "some medical evidence both of the existence of that impairment and of its severity before" the alleged disability onset date. *See Mooers*, 2008 WL 4826290, at *4.

*Mooers* is distinguishable in that the court noted that the claimant had made "no attempt to show that [his impairment, ulnar neuropathy at the elbows] was by its very nature 'slowly progressive' beyond a conclusory assertion that it 'certainly pre-existed' the date on which the study was performed." *Id*. Here, as the plaintiff's counsel observed, the diagnosis in 2011 of arthritis of both knees, and particularly of end-stage weight-bearing surface arthritis of the left knee, severe enough as of that date to require a total knee replacement, suggests that the condition was a slowly progressive one. In such cases, there need not be *contemporaneous* medical evidence that a condition was severe, as SSR 83-20 makes plain in discussing the example of fictional claimant Henry Rogers. *See* SSR 83-20 at 52. In that example, a medical advisor inferred that, by April 13, 1979, Rogers' claimed onset date of disability, it was reasonable to expect that he was able to lift no more than 20 pounds at a time, frequently lift no more than 10 pounds, and stand and walk about six hours in an eight-hour day, in circumstances in which (i) the only medical evidence available, dated January 23, 1980, showed that he had peripheral arterial disease of listing severity, (ii) his employer had asked him to take early retirement in April 1979, after he had become less capable of covering his assigned territory because of pain in his legs, and (iii) a neighbor had stated that Rogers ceased fishing and hunting in the fall of 1978 when his legs would not hold up and he was afraid to walk. *See id*.

At oral argument, counsel for the commissioner also argued against a finding of ambiguity on the bases that (i) the administrative law judge supportably rejected the retrospective opinion of Dr. Hammond, *see* Record at 26, (ii) two nonexamining agency

consultants, Donald Trumbull, M.D., and Richard T. Chamberlin, M.D., found insufficient evidence to assess the plaintiff's condition prior to her date last insured, *see id.* at 94, 301, and, (iii) when the plaintiff saw a doctor for the first time in several years on July 24, 2010, that doctor, Renato Medrano, M.D., deemed her past medical history unremarkable and assessed no work-related restrictions, and the plaintiff did not indicate that her arthritis caused severe restrictions, *see id.* at 285-88.

As the commissioner points out, *see* Defendant's Opposition to Plaintiff's Statement of Errors ("Opposition") (ECF No. 12) at 6, this court has stated that a finding by state agency reviewing physicians of insufficient evidence to assess a claimant's condition during a remote period "cut[s] against, rather than support[s], a finding of ambiguity[,]" *McGlynn v. Astrue*, No. 1:11-cv-395-DBH, 2012 WL 2913535, at *5 (D. Me. June 28, 2012) (rec. dec., *aff'd* July 17, 2012). Nonetheless, in finding insufficient evidence, Drs. Trumbull and Chamberlin did not have the benefit of review of the Crothers note, which postdated their RFC opinions. *See* Record at 94, 301, 370.

In addition, as the plaintiff's counsel pointed out at oral argument, Dr. Medrano, an agency consulting examiner, noted that the plaintiff reported that she started to develop leg pain and ankle swelling about five years earlier. *See id.* at 285. Dr. Medrano did assess restrictions, stating: "Based on the examination, [the plaintiff] *has restriction* to do work-related activities such as standing, walking, and bending. She can do work-related activities such as sitting, lifting, carrying, handling objects, hearing, speaking, and traveling." *Id.* at 288 (emphasis added).

In short, the medical evidence was ambiguous as to the plaintiff's date of onset of disability. In those circumstances, the administrative law judge was obliged pursuant to SSR 83-

20 to enlist the aid of a medical expert at hearing in inferring the onset date. He did not do so and, hence, committed reversible error.

### B. Request for New Administrative Law Judge

In her statement of errors, the plaintiff requested that this court direct that this case be reassigned, upon remand, to a different administrative law judge. *See* Statement of Errors at 10-11. The plaintiff's counsel did not press this point during oral argument. In any event, as the commissioner contends, *see* Opposition at 12-14, she plainly falls short of making a showing that would justify such an instruction. A claimant bears the burden of overcoming the presumption that her case was decided by a fair and impartial adjudicator. *See, e.g., Bickford v. Barnhart*, No. 05-236-P-S, 2006 WL 2822391, at *5 (D. Me. Sept. 29, 2006) (rec. dec., *aff'd* Oct. 20, 2006). To do so, she must present convincing evidence that a risk of actual bias or prejudgment is present. *See id*. The plaintiff complains that the administrative law judge committed "open and obvious" errors and exceeded the bounds of "reasonable discretion" in failing to apply SSR 83-20. *See* Statement of Errors at 10-11. Failure to apply a ruling, standing alone, does not evidence a lack of fairness or impartiality.

### II. Conclusion

For the foregoing reasons, I recommend that the decision of the commissioner be **VACATED** and the case **REMANDED** for further proceedings consistent herewith.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 28th day of April, 2014.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge